UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH NEMEC,<br><br>                 Plaintiff,<br><br>v.<br><br>RALPH W. SHRADER, C.G. APPLEBY,<br>SAMUEL R. STRICKLAND, JOSEPH<br>GARNER, DENNIS O. DOUGHTY, and<br>BOOZ ALLEN HAMILTON, INC.,<br><br>                 Defendants. | 09 Civ. 7466 (LAK) |
| GERD WITTKEMPER,<br><br>                 Plaintiff,<br><br>v.<br><br>RALPH W. SHRADER, C.G. APPLEBY,<br>SAMUEL R. STRICKLAND, JOSEPH<br>GARNER, DENNIS O. DOUGHTY, and<br>BOOZ ALLEN HAMILTON, INC.,<br><br>                 Defendants. | 09 Civ. 8290 (LAK) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINTS WITH PREJUDICE

Everett C. Johnson, Jr.
J. Christian Word
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Rebecca S. Giltner
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile (212) 751-4864

*Attorneys for Defendants Ralph W. Shrader,
C.G. Appleby, Samuel R. Strickland, Joseph
Garner, Dennis O. Doughty, and Booz Allen
Hamilton, Inc.*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... i

SUMMARY OF THE ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

     A.     The Company's Common Stock Plan and Plaintiffs' Retirements ......................... 3

     B.     The Carlyle Transaction ........................................................................................ 4

     C.     Plaintiffs' Original Theory Of The Case Was Dismissed In Delaware ................. 5

     D.     Plaintiffs' Second And Current Theory Of The Case ............................................ 6

ARGUMENT ........................................................................................................................... 7

I.     The State Law Claims Are Barred By *Res Judicata* ................................................. 7

II.     Plaintiffs Do Not and Cannot State A Federal Securities Fraud Claim ........................... 10

     A.     A Transfer Restriction Is Not A Security. ........................................................... 12

     B.     Defendants' Alleged Omissions Were Not In Connection With The Sale
             Or Purchase of Any Security, No Matter How The Security Is Defined. ............. 13

     C.     Defendants Did Not Owe Plaintiffs Any Disclosure Duty At The Time Of
             The Alleged Omissions. ....................................................................................... 17

     D.     One Person's Desire To Restructure A Corporation Years In The Future Is
             Not Material Information As A Matter of Law. .................................................... 20

     E.     Plaintiffs Fail To Plead Specific Facts Giving Rise To A Strong Inference
             That Defendants Committed Fraud. ...................................................................... 24

           1.     Plaintiffs Allege Only A Speculative Motive To Defraud ......................... 25

           2.     The Complaints Do Not Plead Any Specific Facts Showing
                Conscious Misbehavior or Recklessness ................................................... 27

III.     Plaintiffs Have Not Alleged Control Liability Under Section 20(a) Of The
      Exchange Act ............................................................................................................. 29

IV.     Even If Not Barred By *Res Rudicata*, Plaintiffs' State Law Claims Should
      Otherwise Be Dismissed ............................................................................................ 30

     A.     Mr. Nemec Cannot Escape New York's Prohibition Against Private Rights
             Of Action For Securities Fraud By Pleading Connecticut Law. .......................... 30

     B.     Plaintiffs' Common Law Fraud Claims Fail For The Same Reasons That
             Their Securities Fraud Claims Fail. ...................................................................... 33

CONCLUSION ...................................................................................................................... 34

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*Ambase Corp. v. City Investing Co. Liquidating Trust,*
    326 F.3d 63 (2d Cir. 2003)..................................................................8, 9

*Amy Axelrod, Inc. v. Simon & Schuster, Inc.,*
    2007 WL 2412257 (S.D.N.Y. Aug. 27, 2007)......................................19

*ATSI Communications, Inc. v. Shaar Fund Ltd.,*
    493 F.3d 87 (2d Cir. 2007)....................................................................29

*Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    538 F.2d 532 (3d Cir. 1976)..................................................................15

*Barrett v. Freifeld,*
    64 A.D.3d 736, 883 N.Y.S.2d 305 (2d Dep't 2009)............................33

*Basic Inc. v. Levinson,*
    485 U.S. 224, 108 S. Ct. 978 (1988)..............................................21, 22

*Burkybile v. Board of Education,*
    411 F.3d 306 (2d Cir. 2005)....................................................................8

*Campo v. Sears Holdings Corp.,*
    635 F. supp. 2d 323 (S.D.N.Y. 2009) ...........................*24, 25, 27, 29*

*Capri v. Murphy,*
    856 F.2d 473 (2d Cir. 1988)..................................................................32

*Castellano v. Young & Rubicam, Inc.,*
    257 F.3d 171 (2d Cir. 2001)..................................................................18

*Chiarella v. United States,*
    445 U.S. 222, 100 S. Ct. 1108 (1980)............................................17, 18

*Connecticut National Bank v. Giacomi,*
    699 A.2d 101 (Conn. 1997) ..................................................................33

*Connecticut National Bank v. Giacomi,*
    659 A.2d 1166 (Conn. Super. Ct. 1995) ..............................................32

*Couldock & Bohan, Inc. v. Société Generale Securities Corp,*
    93 F. Supp. 2d 220 (D. Conn. 2000)....................................................30

*CPC International Inc. v. McKesson Corp.,*
    70 N.Y.2d 268, 519 N.Y.S.2d 804 (1987) ...................................................................31

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    395 F.3d 25 (2d Cir. 2005), *rev'd on other grounds,*
    547 U.S. 71, 126 S. Ct. 1503 (2006) ........................................................................14

*Daly v. Kochanowicz,*
    884 N.Y.S.2d 144 (2d Dep't 2009) ........................................................................33

*Danner v. Himmelfarb,*
    858 F.2d 515 (9th Cir. 1988) ...................................................................................14

*Defer LP v. Raymond James Financial, Inc.,*
    2009 Wl 2971092 (S.d.N.Y. Sept. 17, 2009) ....................................................25, 28

*Dover Historical Society, Inc. v. City of Dover Planning Commission,*
    902 A.2d 1084 (Del. 2006) .........................................................................................8

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust. Co.,*
    375 F.3d 168 (2d Cir. 2004)....................................................................................11

*Fischoff v. Coty Inc.,*
    2009 WL 1585769 (S.D.N.Y. June 8, 2009) .......................................................15

*Ganino v. Citizens Utilities Co.,*
    228 F.3d 154 (2d Cir. 2000)...............................................................................24, 25

*Glazer v. Formica Corp.,*
    964 F.2d 149 (2d Cir. 1992)....................................................................................23

*Gorga v. Uniroyal Chemical Corp.,*
    45 Conn. Supp. 24, 697 A.2d 731 (Conn. Super. Ct. 1996) ...............................32

*Halperin v. eBanker USA.com, Inc.,*
    295 F.3d 352 (2d Cir. 2002).....................................................................................20

*Harborview Master Fund, LP v. Lightpath Technologies, Inc.,*
    601 F. Supp. 2d 537 (S.D.N.Y. 2009)....................................................................19

*Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,*
    723 F. Supp. 976 (S.D.N.Y. 1989) ...........................................................21, 22, 23

*Iles v. Swank,*
    2006 WL 1806365 (N.D. Ill. June 28, 2006)........................................................17

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
　　398 F. Supp. 2d 244 (S.D.N.Y. 2005).................................................................15

*In re Authentidate Holding Corp. Securities Litigation*,
　　2009 WL 755360 (S.D.N.Y. Mar. 23, 2009) ....................................................18

*In re Cedent Corp. Securities Litigation*,
　　81 F. Supp. 2d 550 (D.N.J. 2000) .......................................................................15

*In re Interactive Network, Inc. Securities Litigation*,
　　948 F. Supp. 917 (N.D. Cal. 1996) .....................................................................17

*In re Ivan F. Boesky Securities Litigation*,
　　825 F. Supp. 623 (S.D.N.Y. 1993) ......................................................................17

*In re Koreag, Controle et Revision S.A.*,
　　961 F.2d 341 (2d Cir. 1992)..................................................................................31

*In re Parmalat Securities Litigation*,
　　376 F. Supp. 2d 472 (S.D.N.Y. 2005)..................................................................18

*In re Take-Two Interactive Securities Litigation*,
　　551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................29

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
　　2006 WL 1080395 (S.D.N.Y. Apr. 24, 2006).....................................................33

*Kalin v. Xanboo, Inc.*
　　526 F. Supp. 2d 392 (2d Cir. 2001) .....................................................................29

*Kamholtz v. Yates County*,
　　2009 WL 3463481 (2d Cir. Oct. 29, 2009)............................................................3

*Keating v. BBDO International, Inc.*,
　　438 F. Supp. 676 (S.D.N.Y. 1977) ......................................................................16

*Ketchum v. Green*,
　　557 F.2d 1022 (3d Cir. 1977)...............................................................................16

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
　　313 U.S. 487 (1941)..............................................................................................31

*Latesco, L.P. v. Wayport, Inc.*,
　　2009 WL 2246793 (Del. Ch. July 24, 2009)........................................................19

*LaPoint v. AmerisourceBergen Corp.,*
    970 A.2d 185 (Del. 2009) .................................................................................8

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005)...........................................................................11

*Levinhar v. MDG Medical, Inc.,*
    2009 WL 4263211 (Del. Ch. Nov. 24, 2009) ...........................................8, 10

*Leykin v. AT & T Corp.,*
    423 F. Supp. 2d 229 (S.D.N.Y. 2006)........................................................14, 16

*L.L. Capital Partners, L.P. v. Rockefeller Center Properties, Inc.,*
    921 F. Supp. 1174 ( S.D.N.Y. 1996)...............................................................21

*Lyondell Chemical Co. v. Ryan,*
    970 A.2d 235 (Del. 2009) ...............................................................................24

*Maldonado v. Flynn,*
    417 A.2d 378 (Del. Ch. 1980).......................................................................7, 9

*Migra v. Warren City School District Board of Education,*
    465 U.S. 75, 104 S.Ct. 892 (1984)....................................................................7

*Nelson v. Stahl,*
    173 F. Supp. 2d 153 (S.D.N.Y. 2001)..............................................................13

*Nelson, Srep v. Paramount Communications, Inc.,*
    872 F. Supp. 1242 (S.D.N.Y. 1994).................................................................23

*New Jersey & Its Division of Investment v. Sprint Corp.,*
    314 F. Supp. 2d 1119 (D. Kan. 2004)..............................................................19

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)............................................................................27

*Owens v. Gaffken & Barriger Fund, LLC,*
    2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009)................................................29

*Panfil v. ACC Corp.,*
    768 F. Supp. 54 (W.D.N.Y. 1991), *aff'd,* 952 F.2d 394 (2d Cir. 1991) ............21

*Playtex Family Products, Inc. v. St. Paul Surplus Lines Insurance Co.,*
    564 A.2d 681 (Del. Super. Ct. 1989) ..............................................................10

*Pross v. Katz,*
    784 F.2d 455 (2d Cir.1986 ...................................................................................14

*Reves v. Ernst & Young,*
    494 U.S. 56, 110 S. Ct. 945 (1990).........................................................................12

*Sanderson v. Roethenmund,*
    682 F. Supp. 205 (S.D.N.Y. 1988) .......................................................................15

*Sargiss v. Magarelli,*
    12 N.Y.3d 527, 881 N.Y.S.2d 651 (2009) ............................................................33

*Schlaeppi v. Delaware Trust Co.,*
    525 A.2d 562 (Del. Ch. 1986)...............................................................................10

*S.E.C. v. Dorozhko,*
    574 F.3d 42 (2d Cir. 2009)............................................................................. 17, 18

*S.E.C. v. Zandford,*
    535 U.S. 813, 122 S. Ct. 1899 (2002) ............................................................14, 18

*Sedighim v. Donaldson, Lufkin & Jenrette, Inc.,*
    167 F. Supp. 2d 639 (S.D.N.Y. 2001)...................................................................20

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994)............................................................................26, 29

*Staehr v. Hartford Financial Services Group, Inc.,*
    547 F.3d 406 (2d Cir. 2008)....................................................................................3

*Steinman v. Levine,*
    2002 WL 31761252 (Del. Ch. Nov. 27, 2002) ......................................................8

*Taylor v. First Union Corp. of South Carolina,*
    857 F.2d 240 (4th Cir. 1988) ...........................................................................23, 24

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital, Inc.,*
    531 F.3d 190 (2d Cir. 2008)..................................................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308, 127 S. Ct. 2499 (2007) ..............................................................11, 25

*Totalplan Corp. of America v. Colborne,*
    14 F.3d 824 (2d Cir. 1994)....................................................................................33

*United States v. O'Hagan,*
    521 U.S. 642, 117 S. Ct. 2199 (1997) .................................................................18

*Villada v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    460 F. Supp. 1149 (S.D.N.Y. 1978) ...................................................................15

*Wells Fargo Asia, Ltd. v. Citibank, N.A.,*
    936 F.2d 723 (2d Cir. 1991) ..............................................................................31

## RULES AND STATUTES

15 U.S.C. § 77l(a)(2) ...............................................................................................32

15 U.S.C. § 78c(a)(10) .......................................................................................12, 33

15 U.S.C. § 78c(a)(13) .............................................................................................15

15 U.S.C. § 78c(a)(14) .............................................................................................15

15 U.S.C. § 78u-4(b) ................................................................................................11

15 U.S.C. § 78u-4(b)(2) ...........................................................................................24

17 C.F.R. § 240.10b-5 ..............................................................................................11

17 C.F.R. § 240.12h-1(f)(1)(iv) ...............................................................................14

17 U.S.C. § 78l(g) ....................................................................................................13

C.G.S.A. § 36b-29(a)(2) ..........................................................................................32

C.G.S.A. § 36b-33(a) ...............................................................................................30

Del. Ch. R. 15(aaa) ..................................................................................................10

DEL. CODE ANN. tit. 8, § 202(c)(2) .........................................................................12

DEL. CODE ANN. tit. 8, § 160(a) ..............................................................................12

DEL. CODE ANN. tit. 8, § 342 ..................................................................................18

Fed. R. Civ. P. 9(b) ............................................................................................. *passim*

N.Y. CPLR § 3016(b) ...............................................................................................33

N.Y. Gen. Bus. Law § 352-c .....................................................................................31

Defendants Booz Allen Hamilton, Inc. ("Booz Allen" or the "Company"), Ralph Shrader, CG Appleby, Samuel Strickland, Joseph Garner, and Dennis Doughty ("Individual Defendants," and with Booz Allen, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaints with prejudice of Plaintiffs Joseph Nemec and Gerd Wittkemper under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF THE ARGUMENT

Mr. Nemec and Mr. Wittkemper, retired officers and former common stock holders of Booz Allen, are parties to a contract entitled the Booz Allen Hamilton, Inc. Officers' Stock Rights Plan (the "Plan"). The Plan governs all aspects of the relationship between Booz Allen and its stockholders with respect to Booz Allen stock, including the ability to purchase, hold, and transfer shares. Specifically, the Plan mandates that shareholders may only sell their stock to Booz Allen and requires the Company to purchase the shareholder's stock whenever he wishes to sell. A shareholder's ability to retain his shares is contingent upon his continued employment with the Company. Upon termination, a shareholder must sell his stock to the Company immediately. Upon retirement, disability, or death, however, the Plan permits the shareholder to retain his stock for an additional two years, during which he may require the Company to purchase it at his sole discretion. After the two-year period expires, the Company may redeem the stock, a right the Company has consistently and promptly exercised.

Plaintiffs retired on March 31, 2006. Two years later, Booz Allen, consistent with its longstanding practice, repurchased Plaintiffs' stock. Undeniably, Plaintiffs' stock would have been worth more if Booz Allen had not exercised its contractual redemption right because, four months later, Booz Allen participated in a transaction that provided all then-current Booz Allen shareholders with more consideration for their stock than Plaintiffs received. As in virtually any similar transaction, former shareholders would have preferred to own their shares at closing.

Because the parties' relationships are governed by contract (and that contract selects Delaware law), Plaintiffs initially brought suits in the Delaware Court of Chancery challenging Booz Allen's exercise of its contractual rights. The Chancery Court dismissed their suits, finding among other things that the parties' contractual relationship controlled and that Plaintiffs were not otherwise owed a separate fiduciary duty. Having failed in Delaware, Plaintiffs now turn to this Court with a whole new theory—securities fraud.

This case represents the square peg for the round hole of the federal securities laws. Plaintiffs' latest theory is that Defendants committed securities fraud by breaching a duty to disclose Mr. Shrader's supposedly covert, multi-year scheme to defraud his colleagues by convincing them to enter into a transaction with a private equity firm. But because Plaintiffs were aware of the transaction at the time that their stock was redeemed, they are unable to argue that the fraud occurred then. So they allege that the fraud occurred when they retired. Their new hypothesis, however, requires the creation of things that plainly do not fit. Plaintiffs allege an imaginary security that sprung into existence at their retirements. They rely on an imaginary fiduciary duty requiring the disclosure of an, at the time, imaginary transaction. Finally, they allege an imaginary eight-year scheme to sell part of the Company for the sole purpose of profiting from the redemption of their stock.

None of the claims based on this new theory are permissible. First, *res judicata* bars Plaintiffs' state fraud claims because they could and should have been brought in Plaintiffs' first suits in Delaware. Second, these are simply not federal securities fraud claims and, in any event, such claims have not been properly pleaded. The Private Securities Litigation Reform Act of 1995 ("Reform Act") was indeed enacted to stop such imaginary claims. Lastly, even if not barred by *res judicata*, the state claims fail for the same reasons as Plaintiffs' federal claims.

## STATEMENT OF FACTS[1]

Booz Allen is a private global consulting firm of approximately 21,000 employees and 300 stockholders incorporated in Delaware.  Compls. ¶¶ 1, 5, 14.[2]  Plaintiffs allege that Mr. Shrader, Booz Allen's CEO, as well as Mr. Appleby, Mr. Strickland, Mr. Garner, and Mr. Doughty were members of its Board of Directors.  *Id.*  ¶ 15.

### A.     The Company's Common Stock Plan and Plaintiffs' Retirements

Starting in 1988, Booz Allen granted its officers stock rights at its discretion under the Plan.  *See* Ex. C.  Under the Plan's terms, an officer could exercise his stock rights by purchasing the Company's common stock at book value within 60 days of the grant of stock rights.  *Id.* § 3. Mr. Nemec and Mr. Wittkemper were granted stock rights under the Plan throughout their careers at Booz Allen.  Compls. ¶ 1.  By March 2006, Mr. Nemec was granted and had purchased 76,000 shares of Booz Allen common stock, and Mr. Wittkemper was granted and had purchased 28,200 shares of Booz Allen common stock.  *Id.*

The provisions of the Plan imposed certain contractual obligations upon Booz Allen and the officers who acquired shares under the Plan.  Ex. C § 10.  Relevant here are the terms restricting the transfer of shares upon the termination of employment, including at or after an officer's retirement.  *Id.*  If the officer wished to sell all or any portion of his stock while still an employee or within two years of his retirement, the Company was obligated to purchase the

---

[1] The facts recited herein are taken from the allegations of the Complaints, and are assumed to be true for purposes of this motion only.  The Plan is also properly considered here because it is referenced in and integral to the Complaints.  *See, e.g., Kamholtz v. Yates County*, 2009 WL 3463481, at *2 (2d Cir. Oct. 29, 2009) (court properly considered documents referenced in the complaint when analyzing motion to dismiss).  The Court may also take judicial notice of documents publicly filed in other courts.  *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (documents properly considered where they are "offered to show that certain" "assertions were made in lawsuits").

[2] The complaints are cited herein as "Compls."  Where the references therein diverge, Mr. Nemec's complaint is cited as "N. Compl." and Mr. Wittkemper's complaint is cited as "W. Compl."  Citations to "Ex." refer to exhibits to the Declaration of Rebecca S. Giltner In Support of the Motion To Dismiss The Complaints With Prejudice, filed contemporaneously herewith.

shares from the officer at book value. *Id.* § 10(a). Upon the expiration of the two-year post-retirement period, the Company could demand that the retired officer sell his shares back to the Company at book value. *Id.* § 10(b). Officers could not transfer stock to anyone other than the Company, at any time. *Id.* §§ 10, 13. Terminated officers were required immediately to sell their shares back to the Company. *Id.* § 6.

On "November 5, 2005" and "in early 2006," Mr. Nemec and Mr. Wittkemper, respectively, first indicated their desires to retire from the Company. Compls. ¶ 1. They maintain that their retirements were completely voluntary, claiming that they each "could have continued in the employ of BAH for the then foreseeable future." *Id.* ¶ 1. Plaintiffs eventually retired on March 31, 2006. *Id.* ¶ 5. In the two-year period following March 31, 2006, Mr. Nemec chose to retain all of the common stock he had purchased over the course of his career. *See* N. Compl. ¶ 6. Mr. Wittkemper, on the other hand, demanded that Booz Allen purchase a portion of his stock holdings in late 2007. *See* Ex. F ¶ 11. On or about April 1, 2008—two years after Plaintiffs retired—Booz Allen acted pursuant to the transferability terms of the common stock. Compls. ¶ 6. The Company repurchased all 76,000 shares of common stock from Mr. Nemec for $12.3 million, as well as the remainder of Mr. Wittkemper's common stock holdings for $3.6 million. Compls. ¶ 6; Exs. E, F ¶¶ 9, 26, 49.

B.     **The Carlyle Transaction**

Four months after the redemptions and more than two years after Plaintiffs' retirements, Booz Allen's stock was "sold or transferred [to] an entity owned by the Carlyle Group and BAH management" (the "Carlyle Transaction"). Compls. ¶ 7. As a result of the purchase of their common stock by the Company on April 1, 2008, Plaintiffs were no longer Booz Allen shareholders at the time of the Carlyle Transaction. Messrs. Nemec and Wittkemper claim that—"by reason of the earlier redemption"—they did not receive an additional $40 million and

4

$16 million, respectively, in gains on their stock that they would have received had they participated in the transaction. *Id.*

C.    **Plaintiffs' Original Theory Of The Case Was Dismissed In Delaware**

Disappointed in not having participated in the Carlyle Transaction, Plaintiffs filed lawsuits in the Delaware Court of Chancery against Booz Allen and certain members of its Board of Directors (including Mr. Shrader and Mr. Appleby) claiming that they breached their duties by repurchasing Plaintiffs' common stock on April 1, 2008—and thus not allowing Plaintiffs to hold their common stock through the Carlyle Transaction (the "Delaware Actions"). *See* Exs. E, F ¶ 3. In the Delaware Actions, Mr. Nemec and Mr. Wittkemper acknowledged that they received more than $12.3 million and $3.6 million, respectively (in addition to Mr. Wittkemper's previous proceeds from the exercise of his put right) when their shares were repurchased by Booz Allen on April 1, 2008. *Id.* ¶¶ 9, 26, 49. Plaintiffs also acknowledged that the Plan plainly granted Booz Allen the right to repurchase when it did. *See id.* ¶ 3 (Plaintiffs' Delaware complaints alleging "Booz Allen's stock rights plan ostensibly permitted—but did not require—redemption of Plaintiff's shares"). Despite these gains and the clear contractual language, Plaintiffs contended that they should have been allowed to hold their common stock and participate in the Carlyle Transaction. *Id.* ¶¶ 1, 48-49. Accordingly, they brought claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment arising from Booz Allen's repurchase. *Id.* ¶ 3.

To support their Delaware claims, Plaintiffs alleged, *inter alia*, that in approximately "January 2006," there were "discussions within Booz Allen of separating its two principal business lines—*i.e.*, governmental and commercial—into separate legal entities." *See id.* ¶ 13. They alleged that "Credit Suisse First Boston was engaged as a financial advisor to assist in this process." *Id.* Plaintiffs further alleged that in "in mid-2007" the "firm leadership held

discussions about a potential transaction." *Id.* ¶¶ 14-15. Plaintiffs' verified complaints go on to detail a series of additional actions in late 2007 and 2008 by Booz Allen, its management, and its Board of Directors that eventually led to the closing of the Carlyle Transaction on July 31, 2008. *Id.* ¶¶ 16-23; 28-33. Also, Mr. Wittkemper alleged that in "December 2007," he sought to exercise his right to have the Company repurchase his common stock during the two-year post retirement window. He claimed that Booz Allen's "management team" cautioned him *against* selling his common stock "because important changes at Booz Allen were imminent." *Id.* ¶ 11.

The Delaware court granted the motion to dismiss Plaintiffs' complaints for failure to state a claim on April 30, 2009.[3] *See* Exs. G, H. The court held, *inter alia*, that the Plan governed the parties relationships and that the Board did not now owe a separate fiduciary duty to Plaintiffs, as opposed to the Company as a whole. *Id.* at 8-9.

### D.  Plaintiffs' Second And Current Theory Of The Case

Plaintiffs now claim that Booz Allen and the Individual Defendants committed securities fraud. Plaintiffs allege that Booz Allen owed them a fiduciary duty and that, upon retirement, Defendants should have disclosed to them the secret plan to engage in a corporate transaction. *See* Compls. ¶ 5. Specifically, they claim that—between "fall 2005" or "November 5, 2005" and March 31, 2006—Defendants did not tell them that Mr. Shrader was "planning the restructuring" of Booz Allen "by means of a sale of the principal division of BAH, the government consulting sector ... with the goal of implementing such a transaction in the near future." *Id.* ¶ 3. Elsewhere they claim, without specificity, that all of the Individual Defendants possessed and failed to disclose this secret information. *See, e.g., id.* ¶ 9. They then claim that they would not

---

[3] Plaintiffs appealed the dismissals, and the appeals are pending. *See* I, J.

6

have retired on March 31, 2006, if the alleged "secret" information regarding the Company's future restructuring and impending transaction had been disclosed. *Id.* ¶ 5.

Plaintiffs do not identify a meeting, conversation or negotiation to or with anyone (much less between a Defendant and a potential buyer, investment banker or attorney) before March 2006 concerning a split-up or transaction to support their allegations. Rather, Plaintiffs allege that, in 2009, former Booz Allen officer Foster Rich (who is also suing the Company under assorted and original theories) told them about the Company's alleged pre-March 2006 plans to split up the government and commercial businesses. N. Compl. ¶ 232; W. Compl. ¶ 234.

## ARGUMENT

**I.    THE STATE LAW CLAIMS ARE BARRED BY *RES JUDICATA***

Plaintiffs bring claims here for common law fraud and Mr. Nemec brings a claim for securities fraud under section 36b-29 of the Connecticut Uniform Securities Act ("CUSA"). Each is precluded by *res judicata* because Plaintiffs could have brought it in their original suits in the Delaware Court of Chancery. The *res judicata* rule "require[s] a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, [rather] than ... prosecute overlapping or repetitive actions in different courts or at different times." *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980). It is indisputable that Plaintiffs' claims here and previous claims in Delaware stem from the same transaction. Both concern Plaintiffs' inability to participate in the Carlyle Transaction because their common stock was repurchased by Booz Allen before the transaction. Thus, Plaintiffs' attempt to bring claims here that they chose not to bring—but could have brought—in their previous suits is barred.

Because Plaintiffs' original action was brought in Delaware state court, Delaware law governs the *res judicata* analysis. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984) ("a federal court must give to a state-court judgment the same

preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"); *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 310 (2d Cir. 2005) (same).  A claim is barred by *res judicata* in Delaware if:  "(1) the court that adjudicated the prior action had jurisdiction to do so; (2) the parties to the subsequent action are the same as (or privies to those in) the prior action; (3) the causes of action in both cases are the same or the subsequent action arises from the same transaction that formed the basis of the prior action; (4) the merits in the prior action were decided adversely to the contentions of the plaintiff; and (5) the prior action was final." *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72-73 (2d Cir. 2003) (applying Delaware law); *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) (citations omitted) (same).  All five elements are present here.

*First*, it is undisputed that the Delaware court had jurisdiction to hear Plaintiffs' first suit. *Second*, Plaintiffs' second suit is brought against defendants in their first suit (Booz Allen, Mr. Shrader, and Mr. Appleby) and persons in privity with Booz Allen (Mr. Strickland, Mr. Garner, and Mr. Doughty).  *See, e.g., Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at *10 n.41 (Del. Ch. Nov. 24, 2009) (citations omitted) (relationship between a company and its directors establishes privity for *res judicata* purposes); *Steinman v. Levine*, 2002 WL 31761252, at *11 (Del. Ch. Nov. 27, 2002) (directors of company in privity with company for estoppel purposes).

*Third*, these actions arise from the same transaction underlying the Delaware Actions— the redemption of Plaintiffs' common stock and their alleged injury from not participating in the Carlyle Transaction.  "Delaware, like the federal courts, follows a transactional approach to *res judicata*." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009).  Under Delaware law, "a transaction"—defined as "a common nucleus of operative facts"—"gives rise to only one claim regardless of the number of ways that the claim may be asserted." *Ambase*,

326 F.3d at 73 (citations omitted); *see also Maldonado*, 417 A.2d at 383.  In both suits, Plaintiffs complain about the repurchases that excluded them from the Carlyle Transaction.  In Delaware, they chiefly argued that Booz Allen should not have exercised its repurchase rights at the time that it did.  *See, e.g.,* Exs. E, F ¶¶ 37-46.  Here, they chiefly argue that Booz Allen would not have exercised its repurchase rights when it did if they had not retired when they did.  Compls. ¶ 1.  This subtle shift in theory does not forestall the application of *res judicata*.  *See Ambase*, 326 F.3d at 73 (citing *Maldonado,* 417 A.2d at 382) (*res judicata* precludes second action where it "asserts different substantive theories" that arise from the same facts as the first action).

Plaintiffs could have brought their fraud claims in Delaware.  The Second Circuit held in *Ambase* that, under Delaware law, "if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action, then the claims in the second action are precluded." 326 F.3d at 72-73 (citation omitted).  Here, Plaintiffs' own sworn complaints in Delaware demonstrate that they had already learned—*by the time they filed the Delaware Actions*—that the Company had allegedly considered a possible split-up and transaction before they retired:  "*[i]n or about January 2006*, there were discussions within Booz Allen of separating ... the government and commercial [businesses] … into separate legal entities" and "Credit Suisse First Boston was engaged as a financial advisor to assist in this process."  Exs. E, F ¶ 13 (emphasis added).  This is the same fact upon which their new state fraud claims are based.  Compl. ¶ 3 (claiming that *by March 31, 2006*, Defendants had failed to disclose that they were "planning the restructuring" of Booz Allen through a "sale … of the government consulting sector" and "with the goal of implementing such a transaction in the near future").  Therefore, Plaintiffs knew the factual predicate for their fraud claims when they filed in Delaware and should have pleaded those claims in their first suits.

Plaintiffs' attempt to avoid *res judicata* by claiming that they did not learn of the alleged fraud until 2009 after speaking to another disgruntled former employee, Mr. Rich, is futile. N. Compl. ¶ 232; W. Compl. ¶ 234. All of the events giving rise to the state fraud claims occurred well before Plaintiffs filed their Delaware Actions in July 2008 and therefore could have been learned by Plaintiffs. This potential knowledge triggers *res judicata. See, e.g., Schlaeppi v. Delaware Trust Co.*, 525 A.2d 562, 565-66 (Del. Ch. 1986) (barring second suit because it was based on acts that had occurred by time of first suit and of which plaintiff could have known).

*Fourth*, the dismissal of Plaintiffs' first suits for failure to state a claim was a decision in which the merits were decided adversely to Plaintiffs. *See* Exs. G, H.; *see also Levinhar*, 2009 WL 4263211, at *7 (dismissal with prejudice is an adverse action that satisfies the fourth element of *res judicata*). *Fifth* and finally, the dismissal with prejudice was a final order. *See* Exs. G, H.[4]

Accordingly, the state law claims must be dismissed because, as a matter of fairness, Plaintiffs should have brought all of their clams from the same transaction in one proceeding.

## II.  PLAINTIFFS DO NOT AND CANNOT STATE A FEDERAL SECURITIES FRAUD CLAIM

Unsuccessful in their initial suits, Plaintiffs craft an entirely new theory of the case. No longer is this a dispute about Booz Allen's exercise of contractual rights as Plaintiffs contended in Delaware. It is now a case of securities fraud giving rise to federal claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and rule 10b-5. To avoid dismissal of their section 10(b) and rule 10b-5 claims, Plaintiffs must allege that

---

[4] Delaware Court of Chancery Rule 15(aaa) states that if, in response to a motion to dismiss, a party "fails to timely file an amended complaint or motion to amend" and "the Court thereafter concludes that the complaint should be dismissed under Rules 12(b)(6) or 23.1, such dismissal shall be *with prejudice.*" Plaintiffs did not file an amended complaint or move to amend their complaints after defendants filed a motion to dismiss with prejudice (that the Chancery Court granted). Although Plaintiffs appealed the dismissal of their claims, the dismissal remains a final order for *res judicata* purposes. *See, e.g., Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co.*, 564 A.2d 681, 684 n.2 (Del. Super. Ct. 1989) ("[T]he Courts of this state have indicated that the better view is that judgments on appeal are final for *res judicata* purposes.").

Defendants: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005); *see also* 17 C.F.R. § 240.10b-5. The Reform Act and Federal Rule of Civil Procedure ("FRCP") 9(b) also mandate that the alleged fraud be pleaded with particularity.[5] The Reform Act was enacted "to curb perceived abuses of the § 10(b) private action" namely, pleading fraud by hindsight and failing to allege scienter with specificity. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 2508 (2007). Plaintiffs must therefore detail the omissions that they contend were fraudulent, identify the speaker, state where and when the omissions were made, and explain with particularity why the omissions were fraudulent. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004).

The Complaints fail to state a claim under these exacting standards for five chief reasons. *First*, the valid transfer restrictions imposed on Plaintiffs' stock by the Plan are simply not "securities" to which the federal securities laws apply. *Second,* the alleged omissions were not made "in connection with the purchase or sale of a security" because no investment decision was made at retirement. *Third,* silence is actionable only if there exists a duty to disclose and none of the Defendants owed Plaintiffs any such duty. *Fourth*, the allegedly omitted information—one person's dreams about the firm's restructure and possible transaction—are immaterial as a matter of law. *Finally*, Plaintiffs do not plead particularized facts giving rise to a strong inference of scienter as required by the Reform Act or FRCP 9(b).

---

[5] 15 U.S.C. § 78u-4(b) (requiring that omissions and "state of mind" are pleaded with particularity); FRCP 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

A.     **A Transfer Restriction Is Not A Security.**

Because Plaintiffs cannot contend that Defendants did not disclose the existence of the

Carlyle Transaction when Plaintiffs' common stock was actually purchased in 2008, Plaintiffs

are forced to invent a separate securities transaction that occurred at their retirements, when they

can claim a failure to disclose.  Their first step in this effort is to create a new security separate

and apart from the Booz Allen stock, *i.e.,* Booz Allen's right to redeem their stock.  Plaintiffs

claim that this is an "option" and, therefore, must be a "security" as defined by section 3(a) of the

Exchange Act.  *See* 15 U.S.C § 78c(a)(10) (security defined to include a "put, call ... [or] option

... on any security").  *See* Compls. ¶ 1.  While the word "option" may *describe* in some way the

operation of this particular term of the Plan, it does not automatically follow that the exercise of

redemption rights under the Plan is itself a security.  *Reves v. Ernst & Young*, 494 U.S. 56, 61-

62, 110 S. Ct. 945, 949 (1990) (citations omitted) ("in interpreting the term 'security,' 'form

should be disregarded for substance and emphasis should be on economic reality'").  Indeed,

Plaintiffs' phrases, "call option" and "right to put," Compls. ¶ 1; N. Compl. 248, are not even to

be found in the Plan.

As Plaintiffs concede, "[t]he Stock Plan had the effect of a restrictive shareholder

agreement."  Compls. ¶ 35; *see also* Exs. E, F ¶ 10.  The retirement redemption term in the Plan

is indeed an ordinary restriction on transfer, valid under Delaware corporate law, that attached to

and governed every share of Booz Allen stock.[6]  Booz Allen stock is the only "security" here,

and Plaintiffs' so-called "option" at retirement is no more than a contractual term governing a

shareholder's ability to hold that security that only exists in connection with owning the

---

[6] *See, e.g.*, DEL. CODE ANN. tit. 8, § 202(c)(2) ("A restriction on the transfer ... of securities of a corporation ... is permitted ... if it [o]bligates the corporation ... to purchase the securities which are the subject of an agreement respecting the purchase and sale of the restricted securities."), *see also id.* at § 160(a) ("Every corporation may purchase, redeem, ... sell, ... its own shares").

underlying security. *See* Ex. C §10(b) (section of Plan entitled "Repurchase Rights and Obligations"). As such this alleged "option" simply bears none of the hallmarks of an independent security. Indeed, it is not an investment separate and distinct from the investment in what is indisputably a security, Booz Allen stock. Plaintiffs' sole basis for the contention that the "option" is a security appears to be that Booz Allen has discretion to redeem after the two-year period (assuming Plaintiffs did not force Booz Allen to redeem before that time). But it simply cannot be the case that every exercise of discretion related to a security is itself a security. Indeed, the Plan vests Booz Allen with the discretion to waive the forfeiture of stock rights if unexercised 60 days after vesting. Ex. C § 4. And, of course, Booz Allen has the discretion to terminate an employee's employment, thus triggering immediate redemption. *Id.* § 10(a). Under Plaintiffs' theory, each of these opportunities to exercise discretion *is a separate security* that may be subject to registration with the U.S. Securities and Exchange Commission.[7] We are not aware of any authority holding that a similar restriction on transfer is a security simply because it involves an element of discretion, and this Court should not be the first.

Plaintiffs' section 10(b) claims should therefore be dismissed on the grounds that the alleged "option" is not a security. *See, e.g., Nelson v. Stahl,* 173 F. Supp. 2d 153, 163-64 (S.D.N.Y. 2001) (complaint fails to state a cause of action where pleaded interests were not "securities' within the meaning of the Exchange Act).

### B.    Defendants' Alleged Omissions Were Not In Connection With The Sale Or Purchase of Any Security, No Matter How The Security Is Defined.

The Complaints should equally be dismissed because the alleged omissions were not central to the purchase or sale of a security, no matter how it is defined. To be actionable, the

---

[7] Section 12(g) of the Exchange Act requires certain companies to register securities, including employee stock options absent an exception. 17 U.S.C. § 78l(g). SEC rule 12h-1 creates an exception where the option and the

"scheme to defraud" must "coincide" with the "sale of securities." *S.E.C. v. Zandford,* 535 U.S. 813, 822, 122 S. Ct. 1899, 1904 (2002). This means, "the fraud must be 'integral to the purchase and sale of the securities in question.'" *Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006) (citing *Pross v. Katz,* 784 F.2d 455, 459 (2d Cir. 1986), quoted in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 37 (2d Cir. 2005), *rev'd on other grounds,* 547 U.S. 71, 126 S. Ct. 1503 (2006)). Acts that are "merely incidental or tangentially related to the sale of securities will not meet the 'in connection with' requirement." *Leykin,* 423 F. Supp. 2d at 241 (citation omitted). The alleged fraudulent omissions were not in connection with a sale or purchase of a security for two key reasons: (1) even if the redemption terms are considered securities, they were purchased under the Plan before the alleged omissions; and (2) the omissions were not in connection with the purchase or sale of Plaintiffs' stock.

*First,* even if the redemption terms are "securities," they were purchased (or sold) at the same time that Plaintiffs purchased their common stock—*not* in connection with the alleged fraud at retirement. Plaintiffs concede that the redemption rights in the common stock are rooted in the Plan, which Plaintiffs entered into during their employment. *See* Compls. ¶ 1; Ex. C § 3 (officers owned common stock upon annual exercise of stock options during employment). The "nature of an instrument is to be determined at the time of issuance, not at some subsequent time." *Danner v. Himmelfarb*, 858 F.2d 515, 520 (9th Cir. 1988). Thus, under Plaintiffs' theory, the Plan serves as either a contract to purchase or otherwise acquire a put right (or a contract to sell or otherwise dispose of a call right) upon retirement. The Exchange Act includes contracts for transactions that happen in the future. *See* 15 U.S.C. § 78c(a)(13)-(14) (terms "buy" and "purchase" include "any contract to buy, purchase, or otherwise acquire," and terms "sale" and

---

underlying stock are, *inter alia*, subject to transfer restrictions. 17 C.F.R. 240.12h-1(f)(1)(iv). Tellingly, the U.S. Securities and Exchange Commission has not taken the position that transfer restrictions are themselves securities.

"sell" include "any contract to sell or otherwise dispose of"). It is irrelevant that Plaintiffs did not actually acquire (or dispose of) the security until retirement. Therefore, to the extent that Plaintiffs made any investment decision at all, it was during their employment, not at retirement.

Merely retiring and starting the clock on repurchase obligations that were entered into years ago does not have the element of decision-making necessary for a purchase or sale. *See, e.g., In re Adelphia Communc'ns Corp. Sec. & Derivative Litig.,* 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005) ("receiving stock as a dividend does not have the element of decision-making necessary for a 'purchase'"). In fact, neither party made *any* decision at all at retirement that related to the alleged investment decision. Defendants did nothing. For this same reason, employee participants in non-voluntary employment stock option plans are not "purchasers" of the securities under section 10(b). *See Fischoff v. Coty Inc.*, 2009 WL 1585769, at *5 (S.D.N.Y June 8, 2009); *In re Cedent Corp. Sec. Litig.*, 81 F. Supp. 2d 550, 557 (D.N.J. 2000) ("there must be an '*individual affirmative decision* to give up a particular consideration in return for a financial interest'") (citations omitted) (emphasis in original).

Plaintiffs' only choice at retirement that was even arguably related to the alleged omissions was whether to retire—not whether and when to sell a security. *See, e.g., Villada v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 460 F. Supp. 1149, 1150 (S.D.N.Y. 1978) (holding under similar factual circumstances that it was "more persuaded" by the "dissenting opinion" in *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 538 F.2d 532, 540 (3d Cir. 1976), which stated that "[t]o the extent that [the plaintiff] had any choice to make, it was not a decision to sell securities. The decision was whether to retire."). There was also no change in Plaintiffs' investment risks at retirement. They invested years before retirement, and the risks and benefits were established at that time. *See Sanderson v. Roethenmund,* 682 F. Supp. 205, 209 (S.D.N.Y.

1988) (no new "sale" under section 10(b) because "the alleged change in the nature of the investment was something contemplated ... when they made the initial purchases").

The triggering of the transferability terms was just an incidental outcome and not "in connection with" a purchase or sale. *See Leykin,* 423 F. Supp. 2d at 242 ("An otherwise legitimate stock transaction that is antecedent, but not integral, to the alleged fraud does not meet the 'in connection with' requirement."). In *Ketchum v. Green*, 557 F.2d 1022, 1028 (3d Cir. 1977), the Third Circuit held that former directors' allegations that a fraudulent scheme that caused them to be fired and thus triggered a provision of their retirement plan requiring the surrender of their shares did not meet the "in connection with" requirement. The Court explained, "[w]hile it may be that the surrender of the shares will constitute a consequence of the defendants' overall scheme, we believe that such a consequence, at best, will be an indirect one." *Id; see also Keating v. BBDO Int'l, Inc.* 438 F. Supp. 676, 681-82 (S.D.N.Y. 1977) (holding that stock plan's requirement to sell back upon termination is not "in connection with" a security and thus dismissing section 10(b) claim). The same outcome is compelled here.

*Second*, the alleged omissions were not otherwise in connection with the sale of Plaintiffs' common stock because retirement did not require its mandatory concurrent sale. To the contrary, Plaintiffs retained discretion for two years to require Booz Allen to repurchase their common stock. Ex. C § 10(a). After the two-year period, Booz Allen had the discretion whether and when to exercise its right to repurchase the stock.[8] *Id.* § 10(b). In reality, Plaintiffs purchased or sold their common stock only three times, none of which occurred during the alleged omissions period: (1) during their employment upon the annual exercise of their stock options, *see* Compls. ¶ 1; Ex. C § 3; (2) in late 2007 when Mr. Wittkemper required Booz Allen

---

[8] Indeed Plaintiffs' Delaware Actions were wholly premised on this discretion. *See* Exs. E, F ¶ 11.

to purchase a portion of his stock, *see* Ex. F ¶ 11; and (3) on April 1, 2008, when Booz Allen

purchased the balance of Plaintiffs' stock, Compls. ¶ 6.  These transactions are years away from

the alleged fraud and too incidental to meet the considerable "in connection with" requirement.

In short, Plaintiffs have failed to plead that the alleged omissions were in connection with

the sale or purchase of a security.  Their section 10(b) claims must be dismissed.

C.   **Defendants Did Not Owe Plaintiffs Any Disclosure Duty At The Time Of The Alleged Omissions.**

Even assuming that this dispute could give rise to a securities fraud claim, such a claim

fails as a matter of law.  Plaintiffs' securities fraud theory is that Defendants knew material facts

that they did not disclose to Plaintiffs at the time of Plaintiffs' security transaction.  However, it

is undeniable that "silence is fraudulent only if there is a duty to disclose." *S.E.C. v. Dorozhko,*

574 F.3d 42, 50 (2d Cir. 2009) (citation omitted).  And the "mere possession of material non-

public information is insufficient to create at duty to disclose." *Chiarella v. United States,* 445

U.S. 222, 243 n.4, 100 S. Ct. 1108, 1122 n.4 (1980).  The alleged omissions are actionable only

if Plaintiffs can plead that each defendant had a valid duty to disclose.  They cannot.[9]

Plaintiffs apparently rely on the insider trading theory of "disclose or abstain," alleging

that because retirement "triggered a securities transaction," the "implementing regulations of the

[Exchange] Act" provide that Booz Allen had a duty to disclose material information.  Compls. ¶

2.  As an initial matter, Plaintiffs do not even *allege* that the Individual Defendants owed them

this or any other affirmative disclosure duty.  For this reason alone, the securities claims against

---

[9] Employers and directors do not owe their employees any general duty to disclose. *In re Ivan F. Boesky Sec. Litig.,* 825 F. Supp. 623, 635 (S.D.N.Y. 1993) (explaining that "corporations and their management are under no general duty to disclose"); *In re Interactive Network, Inc. Sec. Litig.,* 948 F. Supp. 917, 920 (N.D. Cal. 1996) (dismissing shareholders' section 10(b) claim against officer and director because there is no "general duty to disclose"); *Iles v. Swank,* 2006 WL 1806365, at *7 (N.D. Ill. June 28, 2006) (finding no general fiduciary duty between officers and shareholder and dismissing section 10(b) claim and holding a disclosure duty cannot arise "solely from" one's "role in controlling the operations of the company.").

the Individual Defendants should be dismissed with prejudice. *See In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 515 (S.D.N.Y. 2005) (dismissing securities fraud claims against defendant bank based on omissions where "the complaint fails to allege or show that [the bank] owed a duty to disclose that would have made an omission actionable"); *In re Authentidate Holding Corp. Sec. Litig.*, 2009 WL 755360, at *4-5 (S.D.N.Y. Mar. 23, 2009) (dismissing section 10(b) claims because "no duty to disclose the alleged omissions has been plausibly pled").

As to Booz Allen, the duty charge is misplaced. Where "the theory of fraud [i]s silence or nondisclosure ... remaining silent [i]s actionable only where there [i]s a duty to speak, arising from a fiduciary relationship." *Dorozhko,* 574 F.3d at 48 (citing *Chiarella,* 445 U.S. at 222, 100 S. Ct. at 1108; *United States v. O'Hagan,* 521 U.S. 642, 117 S. Ct. 2199 (1997); *Zandford,* 535 U.S. at 813, 122 S. Ct. at 1899). In classical insider trading, an officer or director is the company's (and the shareholder body's) fiduciary, and thus breaches his duties when using non-public company information for personal gain through stock trading. But the same is not true with a corporation. The company is not a fiduciary using someone else's information for personal gain, but rather uses its own information for its own gain. Thus there can be no breach of any fiduciary duty. Some courts have held or assumed that close corporations buying their own stock may, under certain limited circumstances, have a fiduciary duty to disclose material facts. *See, e.g., Castallano v. Young & Rubicam, Inc.,* 257 F.3d 171, 179 (2001). However, Booz Allen is not a close corporation with the same attendant fiduciary duties. *Compare* Compls. ¶ 14 ("At the time plaintiff's stock was redeemed, BAH had approximately 300 stockholders") *with* DEL. CODE ANN. tit. 8, § 342 (a close corporation cannot be held by more than 30 persons).

The absence of a duty to disclose is even more pronounced in this context because the relationship between Plaintiffs and Booz Allen is governed by contract, and not fiduciary duties. Indeed, as the Delaware Chancery Court just explained, a corporation's exercise of rights under a stockholders' agreement does not trigger fiduciary duties of disclosure. *Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793, at *1, *6 (Del. Ch. July 24, 2009).[10] Thus, Plaintiffs have alleged only that their common stock was subject to a contractual, not fiduciary, relationship with Booz Allen. *See, e.g, Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, 2007 WL 2412257, at *7 (S.D.N.Y. Aug. 27, 2007) (citations omitted) ("A conventional [contractual] relationship without more is not converted into a fiduciary relationship by mere allegation."). Booz Allen had the unfettered contractual right to repurchase two years after Plaintiffs retired. Ex. C § 10(b). Both Plaintiffs voluntarily chose to retire with full knowledge of Booz Allen's contractual right and did not inquire as to potential events that might impact the value of their stock. *See Harborview Master Fund, LP, v. Litghtpath Techs., Inc.*, 601 F. Supp. 2d 537, 547-48 (S.D.N.Y. 2009) (finding no duty to disclose because "it would be unreasonable to allow plaintiff—who had the opportunity to gain access to any such information, but chose not to request it—to now recover under federal securities law for such omissions to which it contractually agreed"); *Latesco*, 2009 WL 2246793, at *6 (recognizing that basis for duty of disclosure does "not come into play when the corporation asks a stockholder as an individual to enter into a purchase or sale. There, the stockholder may refuse to do so until he is satisfied the corporation has given him sufficient information to evaluate the decision presented to him.").

Moreover, to impose a fiduciary obligation on the Company here would be inequitable and unworkable. Under the Plan, Booz Allen would not have had the choice, ultimately, to

---

[10] Nor is there any federal fiduciary duty of disclosure. *See, e.g., N.J. & Its Div. of Inv. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1138 (D. Kan. 2004) (dismissing section 10(b) claim because "this court has found no case … recognizing

"disclose or abstain."  Plaintiffs, by choosing when to retire and whether to exercise their discretion in the two-year post-retirement period, could have required Booz Allen to trade, and therefore disclose.  *See* Ex. C § 10(b).  Yet, a corporation (acting through its officers, board, management, and agents) must act in the best interest of all shareholders—here, the other 298 non-trading shareholders.  The Company may prefer not to disclose internal corporate business to retiring (or selling) officers, but not have that choice.  Further, a duty to disclose, on these facts, would be unworkable, and require every company to continually disclose (and update) every potential retiree (and by extension every potential employee or departing employee) with a barrage of trivial information.  Likely for these reasons, we are not aware of any court that has imposed a disclosure duty upon a corporation in a routine employment transaction such as here.

Thus, Plaintiffs' failure to plead a disclosure duty is fatal to their securities fraud claim.

### D.    One Person's Desire To Restructure A Corporation Years In The Future Is Not Material Information As A Matter of Law.

Even assuming retirement was an investment decision and Plaintiffs alleged a duty to disclose, this duty only extends to *material* information.  One person's dreams about a Booz Allen split-up and transaction years in the future are plainly immaterial as matter of law.  *See* Compls. ¶ 3; N. Compl. ¶ 235; W. Compl. ¶ 237.  An omission is material if "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"  *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002) (citations omitted).  Materiality is evaluated in light of what the Defendants knew at the time in question—not with Plaintiffs' current benefit of 20/20 hindsight.  *See, e.g., Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F. Supp. 2d 639, 650 (S.D.N.Y. 2001) ("The probability of a transaction

---

a duty to disclose based on a general fiduciary relationship that a corporation and its directors owe shareholders").

occurring must be considered in light of the facts as they then existed, not with the hindsight knowledge that the transaction was or was not completed.") (citations omitted). Plaintiffs do not demonstrate that Mr. Shrader's (or any of the Individual Defendants') mere thoughts during the relevant period were material because the information then was so speculative and improbable as to be virtually, if not completely, meaningless.

Courts routinely find management's mere intentions or desires to pursue a corporate reorganization immaterial as a matter of law. The materiality of information concerning "a contingent or speculative event" turns on a balancing of the transaction's "indicated probability" and "anticipated magnitude." *Basic Inc. v. Levinson,* 485 U.S. 224, 238, 108 S. Ct. 978, 987 (1988). An event's probability is measured by the number and quality of steps taken towards the transaction's consummation, including the "indicia of interest in the transaction at the highest corporate levels [such as] board resolutions, instructions to investment bankers, and actual negotiations between principals and their intermediaries." *Id.* at 239, 108 S. Ct. at 987. But there can be no finding of materiality for pure wishes or dreams about corporate reorganization because, a mere intention, without more, does not materially increase the probability of such an event. *See, e.g, L.L. Capital Partners, L.P. v. Rockefeller Ctr. Props., Inc.,* 921 F. Supp. 1174, 1180-81 (S.D.N.Y. 1996) (even assuming "events of enormous significance," "the unrequited desire of one partner to engage in a transaction with another" is not material and the "wish to explore restructuring ... or an acquisition would not have alternated the 'total mix' of ... information ... [and is] ...not material" and dismissing claim); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F. Supp. 976, 985 (S.D.N.Y. 1989) (allegation that company failed to disclose its chairman was "'considering' an LBO" is not material and dismissing claim); *Panfil v. ACC Corp.,* 768 F. Supp. 54, 58 (W.D.N.Y. 1991), *aff'd,* 952 F.2d 394 (2d Cir. 1991)

("The mere 'intention' to pursue a possible merger at some time in the future, without more, is simply not a material fact under rule 10b-5. The probability of merger prior to any contact with potential suitors – prior to any evidence that a suitor is in any way interested in a merger – is too remote.") (dismissing claim).

Unable to identify a single concrete step to initiate the split-up and transaction about which they complain, Plaintiffs allege that these plans were "under consideration" by Mr. Shrader. *See, e.g.*, N. Compl. ¶ 221; W. Compl. ¶ 223. Specifically, they contend that between Fall 2005 and March 2006, Mr. Shrader "had been secretly planning the restructuring" of the Company by "means of a sale of the principal division of BAH, the government consulting sector, which provided two-thirds of the revenues of BAH, with the goal of implementing such a transaction in the near future." Compls. ¶ 3. Elsewhere—again, without any supporting facts— Plaintiffs make the conclusory allegation that the Individual Defendants, not just Mr. Shrader, were part of this alleged scheme. *See, e.g.*, N. Compl. ¶ 235; W. Compl. ¶ 237. But over the course of their 40-plus-page complaints and nearly 250 allegations each, neither Plaintiff points to, for example an internal meeting, document, or witness with information concerning a potential split-up or transaction during the relevant period. Plaintiffs do not identify even one *Basic* factor in the relevant period, such as a board resolution, instruction to an investment banker, discussion with a lawyer, or actual negotiations contemplated or completed. *See Hartford Fire Ins. Co.,* 723 F. Supp. at 984 ("[A] transaction is too incipient to be material where a company has resolved to undertake a sale or merger but has not yet identified a potential partner or has made no contact with a partner it has identified.").

Plaintiffs' claim that Mr. Shrader's dreams in late 2005 and early 2006 were material is especially incredible in light their concession that Board and shareholder approval were required

for any transaction. *See* N. Compl. ¶¶ 143-44, 195; W. Compl. ¶¶ 145-46; 197. Sophisticated Booz Allen officers, *see* Compls. ¶ 1; Ex. C, who describe themselves as "founding fathers" of the firm in their Delaware Actions, *see* Exs. E, F ¶ 40, should be presumed to know that their employer is always thinking about strategies to maximize shareholder value. But their employer's *thoughts* to this end are not material information requiring disclosure. *See, e.g.*, *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 244-45 (4th Cir. 1988) (holding that even "tentative" merger *discussions* did not require disclosure because "[t]o hold otherwise would result in endless and bewildering guesses as to the need for disclosure, operate as a deterrent to the legitimate conduct of corporate operations, and threaten to 'bury the shareholders in an avalanche of trivial information'; the very perils that the limit on disclosure imposed by the materiality requirement serves to avoid").[11]

Even if Plaintiffs had identified at least one meeting or preliminary discussion regarding a split-up or deal (which they did not), such discussions would likely still be so speculative as to lack materiality. *See Glazer v. Formica Corp.*, 964 F.2d 149, 155 (2d Cir. 1992) ("The mere fact that a company has received an acquisition overture or that some discussion has occurred will not necessarily be material."); *Hartford Fire Ins. Co.*, 723 F. Supp. at 989 (explaining that "prospective merger [was] too inchoate to be material"); *Nelson, Srep. v. Paramount Commc'ns,*

---

[11] Plaintiffs' other vague references to "half-truths," and omissions are also inactionable. First, while they claim that the Individual Defendants somehow "caused the board" to "ostensibly modify the amount of stock issued to its Stock Right Plan," and that "[n]otice of the change" was "provided" in a March 18, 2003 Stock Reduction Mailing, N. Comp. ¶¶ 83-84; W. Compl. ¶¶ 84-85, in such a way that was false and misleading because its alleged true purpose was to promote the LBO scheme, they also allege that they never relied on this information. In fact, they claim it was "so abstruse as to be meaningless," N. Compl. ¶ 85; W. Compl. ¶ 86; do not even allege that they received or read this information; do not allege who made the statement; do not explain the Individual Defendants' role making this statement (indeed, the Individual Defendants are not even alleged to be on the Board at the time the alleged statement was made, *see* Compls. ¶ 15; N. Compl. ¶ 83-84; W. Compl. ¶¶ 84-85); and never establish that facts showing that statement was false when made or that it was later made false by subsequent events. Next, the alleged "half-truths" and misrepresentations in the Offering Circular have no relevance because they all occurred after Plaintiffs' retirements (indeed, after the repurchase of their common stock). *See, e.g.*, N. Compl. ¶ 163; W. Compl. ¶ 165 (discussing Offering Circular issued on May 22, 2008).

*Inc.,* 872 F. Supp. 1242, 1246 (S.D.N.Y. 1994) (granting motion to dismiss because no materiality where "negotiations had broken off but the two corporations were still 'in contact'"); *see also Taylor*, 857 F.2d at 244-45 (merger discussions contingent on, *inter alia*, legislative changes are "speculative and tentative" and immaterial as a matter of law). Likewise, under Delaware law, had such preliminary discussions or actual negotiations taken place, these mere initial steps would not trigger any of the directors' heightened duties of loyalty or disclosure, which further belies any suggestion that the omissions were material. *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 242 (Del. 2009) (*Revlon* duties, i.e. heightened duties that apply when a company embarks on a change-of-control transaction, are not triggered simply because a company is "in play").

For the foregoing reasons, the information allegedly possessed by Defendants from Fall 2005 to March 2006 was immaterial as a matter of law. This factor alone warrants dismissal.

E.   **Plaintiffs Fail To Plead Specific Facts Giving Rise To A Strong Inference That Defendants Committed Fraud.**

Plaintiffs' securities fraud claims should be dismissed for the additional reason that the Complaints lack the requisite facts to establish the element of scienter. The Reform Act mandates that plaintiffs "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see also Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 332 (S.D.N.Y. 2009). Plaintiffs satisfy this requirement only by setting forth specific facts showing that each defendant "had both motive and opportunity to commit fraud" or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Campo*, 635 F. Supp. 2d at 332-333 (quoting *Ganino v. Citizens Utils. Co*., 228 F.3d 154, 168-69 (2d Cir. 2000)). The Supreme Court recently explained that such facts will be sufficient only "if a reasonable person would deem the inference of

24

scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324, 127 S. Ct. at 2510. Mere conjecture and conclusory assertions of fraudulent intent do not support a strong inference. *Campo*, 635 F. Supp. 2d at 333. Because Plaintiffs premise Booz Allen's scienter solely upon the scienter of the Individual Defendants, Plaintiffs' failure to satisfy their pleading obligations as to the Individual Defendants (as described below) means that they also have failed to allege scienter against Booz Allen. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (to plead a corporation's scienter, a plaintiff must plead facts creating "a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter").

### 1.   *Plaintiffs Allege Only A Speculative Motive To Defraud*

Plaintiffs' primary allegations of scienter are based upon motive. Specifically, Plaintiffs allege that the Defendants stood to make more money in a leveraged buyout and subsequent public offering if their stock was redeemed. *See, e.g.,* Compls. ¶¶ 8, 9, 31 (alleging Individual Defendants sought to "enrich themselves" and generally "increase [their] share of profit payable to management at the resale of new BAH"). The Second Circuit, however, has held repeatedly that allegations of a generic motive to increase compensation, a motive attributable to every corporate officer, do not suggest an intent to commit fraud. *Defer LP v. Raymond James Fin., Inc.*, 2009 WL 2971072, at *9 (S.D.N.Y. Sept. 17, 2009) (collecting Second Circuit cases); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000) ("General allegations that defendants acted in their economic self-interest are not enough."). Instead, Plaintiffs must plead facts establishing "concrete benefits that could be realized by" the alleged omissions and "the means and likely prospect of achieving concrete benefits by the means alleged." *Campo*, 635 F.

Supp. 2d at 333 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). The Complaints do neither.

Far from concrete, the supposed "benefit" to Defendants from defrauding their long-time colleagues was wholly speculative. Plaintiffs' theory is that, in 2006, Defendants did not disclose certain facts to them because Defendants covertly hoped to enter into a transaction two years after Plaintiffs retired, were scheming to manipulate the transaction process so that a portion of the Company would be sold only to a private equity firm rather than any other firm, believed they would successfully dupe almost all of their colleagues into voting to accept a sales price that undervalued the company, and, finally, some years later, make a huge windfall when the acquiring private equity firm took the Company public. The number of variables beyond Defendants' control in this alleged plot and the uncertainty of profit several years in the future undermines any hint of motive. Indeed, this "benefit" can, at most, be described as potential, but is more aptly viewed at hypothetical.

In any event, Plaintiffs also do not quantify the supposed benefit each Defendant expected in 2005 and 2006 as a fruit of their multi-year fraud. The Complaints are able only to describe what Plaintiffs' shares would have been worth had they participated in the 2008 transaction. Nowhere do Plaintiffs plead any facts even suggesting the improper windfall Defendants believed they would achieve and how this compares to what Defendants could have received without committing fraud.[12] Without such facts it is not possible for a reasonable person to determine whether Defendants were motivated to embark on the alleged scheme.

---

[12] Indeed, Plaintiffs do not even allege the benefit each Defendant ultimately received through the first phase of what Plaintiffs describe as a two-part scheme to profit.

2. ***The Complaints Do Not Plead Any Specific Facts Showing Conscious Misbehavior or Recklessness***

Plaintiffs must plead particularized facts showing conduct that is "highly unreasonable and which represents an extreme departure from the standards of ordinary care" to give rise to a strong inference of scienter based on conscious misbehavior or recklessness. *Campo*, 635 F. Supp. 2d at 334 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). Having failed to adequately allege a concrete motive, "the strength of circumstantial allegations conscious misbehavior or recklessness must be correspondingly greater." *Id.* at 334-35 (citations omitted).

The Complaints contain only conclusory assertions, rather than any actual facts, that each Defendant consciously failed to disclose material facts. Indeed, the Complaints expressly state that, prior to 2009, Plaintiffs knew nothing that even caused them to suspect that they were defrauded. They allege that the sole basis for believing it now is that they recently spoke to former Booz Allen officer, Mr. Rich, who believes he was defrauded. N. Compl. ¶ 232; W. Compl. ¶ 234. Mr. Rich, however, retired in March 31, 2005, and has no basis to know what Defendants knew or did not know in March 2006.

Moreover, Mr. Nemec and Mr. Wittkemper (through what they heard from Mr. Rich) simply assert that Mr. Shrader conceived of this elaborate fraud several years ago and that he and the other Defendants secretively implemented it by disposing of unwanted employee-shareholders and rigging the deal process, all without detection. Nowhere do the Complaints provide even the most basic details or factual corroboration supporting these accusations. Plaintiffs do not claim that they have personal knowledge that the Defendants conspired to defraud them. They do not identify any internal corporate documents establishing that such a scheme existed. In fact, the Complaints do not even explain when and how the other Defendants learned of Mr. Shrader's scheme, why they went along, and what they did to hide these facts

27

from Plaintiffs. *See, e.g., Defer*, 2009 WL 2971072, at *10 (strong inference of scienter not demonstrated where complaint did not show that defendants had access to the information).[13]

As for Mr. Shrader, the supposed architect of a multi-year scheme to defraud virtually all of his fellow officers, Plaintiffs principally divine scienter from various internal business decisions (employment and retirement decisions, stock plan changes, efforts to manage two business sectors in a difficult environment). N. Compl. ¶¶ 74-141; W. Compl. ¶¶ 74-143. Plaintiffs, however, fail to plead any facts suggesting that these were not the type of routine business decisions occurring in every company, but instead were intricate and crucial steps to effectuate a several-year-long fraudulent scheme. Plaintiffs' contention that these events were conspicuous evidence of fraud cannot be reconciled with their simultaneous contentions that they did not suspect fraud until 2009 and that the Board of Directors and the rest of the Booz Allen shareholders were (and still are) oblivious to Defendants' efforts to defraud them. The only cogent inference is that these are nothing more than innocuous corporate happenings that lend nothing to an inference of scienter. Plaintiffs also suggest that Mr. Shrader admitted to an unidentified board member in January 2007 that he "had done far more than study" possible transactions. N. Compl. ¶¶ 201-03; W. Compl. ¶¶ 203-05. This alleged conversation, however, says nothing about whether Mr. Shrader had devised and implemented a covert scheme to spin-off a portion of the Company to defraud Plaintiffs nearly a year earlier. By January 2007, the Board was several months into a process of exploring possible transactions, and the Offering Circular discloses that an unsolicited proposal had been received in December 2006. N. Compl.

---

[13] Plaintiffs' conclusory allegations about misstatements in the Offering Circular and the infirm process by which Booz Allen's Board of Directors negotiated and ultimately approved the sale of the Company cannot suggest that Defendants acted with scienter in 2006. N. Compl. ¶¶ 142-224; W. Compl. ¶¶ 144-226. Apart from being much later in time and unsupported by facts, these allegations suggest that Mr. Shrader alone authored the Offering Circular and controlled the sale process. However, Plaintiffs themselves concede that the Board of Directors had the authority to enter into a transaction. N. Compl. ¶ 195; W. Compl. ¶ 197.

¶ 166; W. Compl. ¶ 168.  Plaintiffs do not explain what Mr. Shrader did, why it was inappropriate, and how it suggests that he should have disclosed certain facts to Plaintiffs.

Devoid of actual facts supporting their contentions of fraud, the Complaints resort to inferring fraud from the innocuous fact that some of the Defendants purchased homes in Florida.  N. Compl. ¶¶ 106-09; W. Compl. ¶¶ 107-10.  That these individuals were among the thousands of persons annually who purchase residences in sunny Florida is hardly suggestive of fraud.  Rhetoric aside, Plaintiffs have pleaded nothing to support an inference of scienter, much less the requisite strong inference.  The securities fraud claims should be dismissed for this reason alone.

## III.   PLAINTIFFS HAVE NOT ALLEGED CONTROL LIABILITY UNDER SECTION 20(A) OF THE EXCHANGE ACT

Plaintiffs do not state a claim for control person liability against the Individual Defendants under section 20(a).  To state a claim, Plaintiffs must allege:  "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) meaningful culpable participation in the controlled person's acts of fraud."  *Owens v. Gaffken & Barriger Fund, LLC*, 2009 WL 3073338, at *12 (S.D.N.Y. Sept. 21, 2009) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).  The Complaints fail to meet this standard for two reaons.  First, because there is no primary section 10(b) violation by Booz Allen for the reasons explained above, the section 20(a) claims against the Individual Defendants fail.  *See Shields*, 25 F.3d at 1132; *Campo*, 635 F. Supp. 2d at 336.  Next, Plaintiffs have not adequately pleaded that the Individual Defendants culpably participated in any fraudulent conduct.  Plaintiffs must "adequately allege that the defendant acted at least with recklessness, in the sense required by Section 10(b) of the Exchange Act and Rule 10b-5."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 308 (S.D.N.Y. 2008) (citations omitted).  Plaintiffs must also plead culpable participation with the particularity required by the Reform Act.  *See id.* at 307-08; *Kalin*

*v. Xanboo, Inc., Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007).  Because Plaintiffs have not established the Individual Defendants' scienter regarding the alleged conduct underlying their 10(b) claim, they have not amply alleged any meaningful culpable participation in Booz Allen's alleged deceptive acts.  The section 20(a) claim must be dismissed as well.

For these reasons, and in light of the particularly stringent standards under FRCP 9(b) and the Reform Act that Plaintiffs plead circumstances giving rise to fraud with "great detail" and specificity, the Complaints must be dismissed against all Defendants.

## IV.   EVEN IF NOT BARRED BY RES JUDICATA, PLAINTIFFS' STATE LAW CLAIMS SHOULD OTHERWISE BE DISMISSED

Even if the state law claims are not precluded, Mr. Nemec does not state a claim under the CUSA, and neither Plaintiff states a claim for common law fraud.  First, Mr. Nemec's CUSA claim, brought as an alleged "purchaser" of securities allegedly sold in Connecticut, fails because the CUSA does not apply to this dispute.  Even if it did, it fails for the same reasons that his federal securities laws claims fail.  Finally, Plaintiffs' common law fraud claims must also be dismissed for the exact reasons that their federal securities fraud claims fail as a matter of law.

### A.   Mr. Nemec Cannot Escape New York's Prohibition Against Private Rights Of Action For Securities Fraud By Pleading Connecticut Law.

Mr. Nemec's attempt to avoid New York's ban on private securities fraud actions by bringing a Connecticut statutory claim in this court fails.  Even if the CUSA does apply, his claim would still fail for the same reasons his section 10(b) and 20(a) claims fail.

CUSA section 36b-29 applies only where an "offer to sell" or an "offer to buy is made and accepted" in the state of Connecticut.  C.G.S.A. § 36b-33(a); *see also Couldock & Bohan, Inc. v. Société Generale Sec. Corp.*, 93 F. Supp. 2d 220, 232-33 (D. Conn. 2000) ("Section 36b-29 of CUSA applies only to persons who sell or offer to sell securities in the State of Connecticut").  Mr. Nemec has pleaded no facts to give rise to the inference that Booz Allen sold

or offered to sell securities to him in Connecticut. In fact, his complaint alleges exactly the opposite. Mr. Nemec was employed in Booz Allen's New York office "at all times relevant to the claims herein," specifically from 1981 until September 30, 2008 (indeed even *after* his retirement). N. Compl. ¶ 16. He purchased common stock only as part of his employment in New York. *Id.* ¶ 1. Thus, Connecticut bears no relationship to this claim at all, other than that Mr. Nemec "currently" lives in Old Greenwich. *Id.* ¶ 16.[14]

Mr. Nemec cannot use his current residency in Connecticut in order to escape the Martin Act's prohibition against private rights of action for securities fraud. Under the Martin Act, Mr. Nemec is statutorily precluded from bringing a state securities fraud action based on this transaction. *See CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276-77, 519 N.Y.S.2d 804, 807 (1987) (holding no implied private action under the Martin Act because the specific purpose of the statute was to create a statutory mechanism in which the N.Y. Attorney General would have exclusive enforcement powers thereunder); *see also* N.Y. Gen. Bus. Law § 352-c.[15] Mr. Nemec chose to file this action in New York, not Connecticut. He cannot now pick and choose which substantive law he wants to apply to his claims.[16]

---

[14] Moreover, Booz Allen is a Delaware corporation, headquartered in Virginia. *See* N. Compl. ¶¶ 17-18.

[15] If New York law does not apply, then a consideration of whether Delaware law applies, as provided under the Plan, is warranted. *See* Ex. C § 18.

[16] New York law applies here because it has the greatest interest in the litigation. Plaintiffs assert both diversity of citizenship and federal question jurisdiction. Compls. ¶ 20. In diversity cases, New York's choice-of-law rules apply, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941), whereas in federal question cases, the Court applies the federal common law choice-of-law rules, *see Wells Fargo Asia, Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991). However, the Second Circuit has "discerned no significant difference between the applicable federal and New York choice-of-law rules," which both apply the law of the jurisdiction having the greatest interest in the litigation. *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992). Where jurisdiction is asserted on both diversity and federal question grounds, the Second Circuit simply applies New York's choice-of-law rules. *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994). Under New York's choice-of-law rule, it is clear that New York has the greatest interest in this litigation because Mr. Nemec's employment and the alleged securities transaction occurred in New York.

But even if the CUSA applies, Mr. Nemec's claim must still be dismissed.  Mr. Nemec

brings his claim under section 36b-29 of the CUSA, which provides a remedy for *purchasers* of

securities only, and tracks section 12(2) of the Securities Act of 1933.[17]  *See* C.G.S.A. § 36b-

29(a)(2).  In so doing, Mr. Nemec narrows his theory to allege that "in electing to retire" he

"purchased a right to put his stock to BAH for a period of two years."  N. Compl. ¶ 248.  This

theory falls flat for the same reasons as the section 10(b) claim.  The CUSA language generally

tracks the federal securities laws, *see Connecticut National Bank v. Giacomi*, 659 A.2d 1166,

1179 (Conn. 1995), and "in the absence of state authority to the contrary, [it] will be interpreted

similarly," *Capri v. Murphy,* 856 F.2d 473, 479 (2d Cir. 1988); *see also Gorga v. Uniroyal*

*Chem. Corp.,* 69 A.2d 731, 736 (Conn. Super. Ct. 1996) ("in interpreting CUSA it is instructive

to look to rulings of the federal courts interpreting federal securities law").  The CUSA's

definition of "security" is the same in relevant part as that provided in the Exchange Act,

*compare* C.G.S.A. § 36b-3(19) *with* 15 U.S.C. § 78c(a)(10), thus Plaintiffs do not plead the

existence of a security as explained above, *see supra* § II.A.  Also as discussed above, Mr.

Nemec did not purchase any security at retirement; he purchased the only security relevant here,

his common stock, during his employment at Booz Allen (one term of which was triggered at

retirement).  *See supra* § II.B.  Thus, there was no "person buying" within the meaning of section

36b-29(a)(2) when Mr. Nemec elected to retire.  *Id.*  And for the reasons stated above, Mr.

Nemec fails to plead the existence of any material information during the relevant time period,

---

[17] *Compare* C.G.S.A. § 36b-29(a)(2) ("Any person who offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission ... is liable to the person buying the security") *with* 15 U.S.C. § 77l(a)(2) ("Any person who offers or sells a security ... which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable ... to the person purchasing such security"); *see also Gorga*, 697 A.2d at 735 ("the language of § 36-498(a) [the predecessor to § 36b-29(a)(2)] is based on § 12(2) of the [1933 act]) (citations omitted).

and does not allege with the requisite particularity that any defendants knew or should have known of the untruth or omission. *See id.* § II.D-E.

To the extent that Mr. Nemec seeks to take advantage of section 36b-29(a)(2)'s unique aider and abettor liability provisions (not available under the federal statutes), that attempt too fails because he does not allege a primary violation of section 36b-29. *See, e.g., Conn. Nat'l Bank v. Giacomi*, 699 A.2d 101, 120 (Conn. 1997). Likewise, Mr. Nemec does not state a "control person" liability claim under section 36b-29(c) of CUSA for the same reasons that his control person liability claims fail under section 20(a). *See JHW Greentree Capital, L.P. v. Whittier Trust Co.*, 2006 WL 1080395, at *4-6 (S.D.N.Y. Apr. 24, 2006). For each and all of these reasons, Mr. Nemec's CUSA claim must be dismissed with prejudice.

B. **Plaintiffs' Common Law Fraud Claims Fail For The Same Reasons That Their Securities Fraud Claims Fail.**

Plaintiffs make one last-ditch attempt to participate in the Carlyle Transaction—this time under a theory of common law fraud. For the same reasons that Plaintiffs' federal securities fraud claims must be dismissed, the state fraud claims fail too. To state a claim, Plaintiffs must allege the "representation of a material existing fact, falsity, scienter, deception and injury," *Daly v. Kochanowicz*, 884 N.Y.S.2d 144, 152 (2d Dep't 2009) (citations omitted), and where the claim is "based on an omission or concealment of a material fact, the plaintiff must also allege that the [defendant] had a duty to disclose material information and failed to do so," *Barrett v. Freifeld*, 64 A.D.3d 736, 738, 883 N.Y.S.2d 651, 653 (2d Dep't 2009). Similar to FRCP 9(b) and the Reform Act, "the circumstances constituting the wrong shall be stated in detail." *Sargiss v. Magarelli*, 12 N.Y.3d 527, 530-31, 881 N.Y.S.2d 651, 653 (2009) (quoting N.Y. CPLR § 3016(b)).

Because Plaintiffs' securities fraud claims failed to allege the existence of a security, they were, in fact, nothing more than a common law fraud claim. So for the same reasons that the Complaints fail to allege any duty of disclosure, materiality, or scienter with respect to the securities fraud claims, as explained above, dismissal of the common law fraud claims is warranted here. *See supra* §§ II.C-E. Moreover, Plaintiffs' vague, conclusory assertions are not pleaded with the requisite level of particularity under New York law. *See supra* § II. For these reasons, the common law fraud claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' claims are dismissed with prejudice in their entirety.

Dated: December 15, 2009
        New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By:      /s/ Rebecca S. Giltner___
         Rebecca S. Giltner

885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: rebecca.giltner@lw.com

Everett C. Johnson, Jr.
J. Christian Word
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: everett.johnson@lw.com
Email: christian.word@lw.com

*Attorneys for Defendants Ralph W. Shrader, C.G. Appleby, Samuel R. Strickland, Joseph Garner, Dennis O. Doughty, and Booz Allen Hamilton, Inc.*