

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

www.emmetmarvin.com

Kenneth M. Bialo
*Partner*
Tel: 212-238-3058 • 212-653-1762
Fax: 212-238-3100 • 212-653-1760
kbialo@emmetmarvin.com

April 16, 2010

**BY HAND**

The Honorable Lewis A. Kaplan,
    Judge of the United States District Court
    for the Southern District of New York,
        United States Courthouse,
            500 Pearl Street,
                New York, New York 10007.

    Re: *Joseph Nemec v. Ralph W. Shrader, et al.*, 09 Civ. 7466 (LAK); and
          *Gerd Wittkemper v. Ralph W. Shrader, et al.*, 09 Civ. 8290 (LAK).

Dear Judge Kaplan:

We represent plaintiffs in the above-entitled actions. We submit this letter to respond to the narrow *res judicata* argument set forth in defendants' December 15, 2009 Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaints with Prejudice (at pages 7-10) ("Defts' Mem"). Defendants there argue that plaintiffs' common law fraud claims, and plaintiff Nemec's claim under the Connecticut Uniform Securities Act ("CUSA") (collectively, the "State Fraud Claims"), should be dismissed on the basis of the Delaware Chancery Court's dismissal last year of the contract law claims asserted in *Nemec v. Shrader, et al.*, and *Wittkemper v. Schrader, et al.*, Civil Action Nos. 3878-CC, 3934-CC, 2009 WL 1204346 (Del. Ch. Apr. 30, 2009) (the "Delaware Contract Actions").

EMMET, MARVIN & MARTIN, LLP

The Honorable Lewis A. Kaplan
Page 2
April 16, 2010

We note, as we have previously without contest from defendants, that they do not argue, nor could they, that plaintiffs' Sections 10(b) and 20(a) claims under the Securities and Exchange Act of 1934 are subject to dismissal under principles of *res judicata* -- for the reason that those claims could not have been brought in the Chancery Court. They are exclusively the province of the federal courts. (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaints, dated January 29, 2010 ("Opp Mem"), at 4.)

As the Court may recall, plaintiffs' Opposition Memorandum had pointed out that the Delaware Supreme Court ordered *en banc* review of plaintiffs' appeal from the Chancellor's dismissal decision, and we requested (at pages 3-4) this Court's permission to re-visit the significance of the Delaware Contract Actions, if any, after the Delaware Supreme Court had spoken. The day after the Supreme Court's decision was handed down we forwarded to your Honor its affirmance of the Chancery Court's dismissal, and requested until today to address defendants' *res judicata* argument with respect to the State Fraud Claims. (*See* my letter dated April 7, 2010.)

It is black-letter law that your Honor looks to Delaware's rules of *res judicata* to determine the preclusive effect, if any, of dismissal of the Delaware Contract Actions. *See Board of Managers of the 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*, 652 F.Supp.2d 463, 470 (S.D.N.Y. 2009) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980) and *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000)). *Accord, Lance v. Dennis*, 546 US 459, 126 S.Ct. 1198, 1202-03 (2006); *AmBase Corp. v.*

EMMET, MARVIN & MARTIN, LLP

The Honorable Lewis A. Kaplan
Page 3
April 16, 2010

*City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003); *Walzer v. Muriel, Siebert & Co., Inc.*, 221 Fed.Appx. 153, 155 (3d Cir. 2007). Thus your Honor would assess what preclusive effect another Delaware court would accord to the Chancery dismissals. *AmBase*, 326 F.3d at 72.

Defendants correctly point to the Delaware law principle (Defts' Mem at 9) that if the facts comprising the State Fraud Claims asserted in this case were known, or could have been known, to the plaintiffs at the time the Delaware Contract Actions were brought, then ordinarily the State Fraud Claims in this action would be precluded. Accordingly, defendants make the obligatory contention that indeed plaintiffs knew the factual predicate for the State Fraud Claims asserted in these cases at the time they filed the Delaware Contract Actions, and thus the State Fraud Claims should be barred by *res judicata*. (*Id.*).

What defendants cannot and do not contend is that Delaware *res judicata* would bar the claims in the actions before this Court if they are founded on facts that were not, and could not have been, known. *LaPoint v. Amerisourcebergen Corp.*, 970 A.2d 185, 193 (Del. 2009); *AmBase*, 326 F.3d at 73.

That is exactly the case here. Plaintiffs have alleged that they were not aware until mid-2009 -- just before the instant actions were filed in this Court -- that defendants had failed to disclose material information to them in 2006 thereby defrauding them in connection with plaintiffs' decisions to retire. (Nemec Cmplt at ¶ 232; Wittkemper Cmplt at ¶ 234). It was not until mid-2009 that plaintiffs first came to the discovery that

EMMET, MARVIN & MARTIN, LLP

The Honorable Lewis A. Kaplan
Page 4
April 16, 2010

defendant Ralph W. Shrader ("Shrader") had for several years before their retirement been secretly implementing a scheme to achieve his "dream," as defendants call it (Defts' Mem at 20), of a management led leveraged buy-out ("LBO") of Booz Allen Hamilton, Inc.'s ("BAH") government sector -- a scheme that by the time of their March 2006 voluntary retirements was well along. (Nemec Cmplt and Wittkemper Cmplt at ¶¶ 3-4). It was not until then that they came to realize that Shrader and the other defendants had hidden their deliberate manipulation of perceptions and events at BAH to assure the supermajority needed to approve Shrader's LBO deal, steps that included squeezing out potential opponents and significant shareholders with trumped-up accusations and false reviews (Nemec Cmplt at ¶¶ 74-82; Wittkemper Cmplt at ¶¶ 74-83), reducing the number of shares of BAH stock distributed annually (*id.* at ¶ 83; *id.* at ¶ 84), and pretending to work with the firm committee created to unify BAH by resolving conflicts between the sectors while actually undermining the committee's objectives (*id.* at ¶¶ 117-125; *id.* at ¶¶ 118-126).

This scheme and these steps were thus unknown to plaintiffs when the Delaware Contract Actions were pending in the Chancery Court. Indeed that Court had already dismissed the complaints without leave to amend on April 30, 2009, before plaintiffs learned of the existence in mid-2009 of their fraud claims. At that point plaintiffs had already taken their appeal to the Supreme Court -- ousting the Chancery Court of jurisdiction to consider a Rule 60 motion based on new evidence (*Centaur Partners IV v. Nat'l Intergroup, Inc.*, Case No. 11354, 1990 WL 62884, at *4 (Del. Ch. May 3, 1990) --

EMMET, MARVIN & MARTIN, LLP

The Honorable Lewis A. Kaplan
Page 5
April 16, 2010

and with the filing of the Sections 10(b) and 20(a) claims in this Court imminent, the interest of judicial economy was better served by bringing all fraud claims, including the State Fraud Claims, in one forum.

Delaware *res judicata* principles in this context focus on what plaintiffs knew and when they knew it -- that is, issues of fact. As such, defendants' argument here is not appropriate for determination on their motion to dismiss. *Staehr v. The Hartford Fin. Services Group, Inc.*, 547 F.3d 406, 411 (2d Cir. 2008) (holding that fact-specific inquiry into whether a plaintiff had sufficient facts to place it on inquiry notice is normally inappropriate for resolution on a motion to dismiss); *In re Reserve Fund Securities and Derivative Litigation*, Case Nos. 09 MD.2011(PGG), 09 Civ. 4346(PGG), 2010 WL 685013, at *11 (S.D.N.Y. Feb. 24, 2010) (holding that disputes over allegations in pleadings present factual questions that cannot be resolved on a motion to dismiss); *Aiena v. Olsen*, 69 F.Supp.2d 521, 535-39 (S.D.N.Y. 1999) (holding fact issues precluded dismissal of securities fraud action).[1]

---

[1] Defendants argue that plaintiffs actually knew the factual predicate for their fraud claims when they filed the Delaware Contract Actions on the basis of the allegations there that "in or about January 2006, there were discussions within Booz Allen of separating . . . the government and commercial [businesses] . . . into separate legal entities" and that "Credit Suisse First Boston was engaged as a financial advisor to assist in this process." (Defts' Mem at 9.)

That typographical error -- "January 2006" should have been "January 2007," as can be seen from the next succeeding paragraphs in the Delaware complaints -- is of no account here. Plaintiffs allege that Shrader was tasked by the BAH board of directors to explore strategic options in mid-2006 (Nemec Cmplt at ¶¶ 144, 193; Wittkemper Cmplt at ¶¶ 146, 195), Credit Suisse was retained in the second half of 2006 (*id.* at ¶ 145; *id.* at ¶ 147), BAH management met with Credit Suisse on September 18, 2006 and decided to pursue a sale of government business (*id.* at ¶ 165; *id.* at ¶ 167), and in connection with inquiries from a potential strategic purchaser in December 2006, BAH retained legal counsel in January 2007 (*id.* at ¶¶ 167; 197; *id.* at ¶¶ 169, 199).

(footnote continued on next page)

EMMET, MARVIN & MARTIN, LLP

The Honorable Lewis A. Kaplan
Page 6
April 16, 2010

For the foregoing reasons, the Court should deny defendants' motion to dismiss the State Fraud Claims based on *res judicata*.

Respectfully submitted,

Kenneth M. Bialo (2145)
Counsel for Plaintiffs Nemec and Wittkemper

cc:  Rebecca S. Giltner, Esq.,
     Counsel for Defendants,
        by electronic transmission and U.S. Mail

---

But even if there had been no typographical errors in the Delaware complaints, defendants stretch the meaning of words beyond their breaking point. They simply do not allege, as defendants contend, that any sort of transaction was contemplated in January 2006.

Most importantly, the very fact that defendants make an argument based on a particular date again reinforces that the central issue is what plaintiffs knew, and when they knew it -- questions of fact not suitable for determination on a motion to dismiss.